07-78  Fields

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-78-GWU

GLENDA K. FIELDS,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to
        Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
        404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-78  Fields

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

07-78  Fields

account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the

capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Glenda K. Fields, filed her current application for SSI on May 11, 2004 (Tr. 320-2), alleging disability because of back and leg pain that made it

impossible for her to lift, to sit, stand, walk, or lie down for more than brief periods; she also alleged nervousness and poor concentration (Tr. 328).  She had filed a previous SSI application making similar allegations on April 18, 2001 (Tr. 69-72, 79), which was denied in a decision by an Administrative Law Judge (ALJ) dated December 31, 2002 (Tr. 286-98).  The Appeals Council declined to review the 2002 decision on October 23, 2003 (Tr. 35-8), and evidently no appeal was taken.

The current ALJ found that Mrs. Fields had "severe" impairments consisting of a "torn anterior horn meniscus, right knee, status post surgery," low back pain secondary to degenerative disc disease and heel spurs, left worse than right, and being status post right carpal tunnel surgery.  (Tr. 23).  Although additional evidence was submitted in connection with the plaintiff's current application, the ALJ concluded that the plaintiff retained the same residual functional capacity as had been determined by the prior ALJ in 2002, and relied on vocational expert testimony from an administrative hearing conducted in connection with that application.  Both ALJs concluded that Mrs. Fields was restricted to a restricted range of sedentary level exertion, being able to lift and carry up to 10 pounds occasionally and no more than 2 to 5 pounds frequently from a standing position.  (Tr. 26, 295).  In addition, she was limited to standing or walking less than two hours in an eight-hour work day, was restricted from all climbing, balancing, kneeling, crouching, crawling, and stooping and had a "limited but not totally precluded" ability to understand, remember, and carry out complex instructions.  (Id.).  When presented with these factors at an administrative hearing on October 29, 2002, a Vocational Expert (VE)

testified that there were jobs that such a person could perform and provided the numbers in which they existed in the state and national economies.  (Tr. 575-6).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Although no appeal was taken from the unfavorable 2002 administrative decision, the ALJ did not make a finding that it was administratively final, and appears to have fully considered medical evidence from the prior application in reaching the present decision, thus implicitly reopening the prior application.  Crady v. Secretary of Health and Human Services, 835 F.2d 617, 620 (6th Cir. 1987).  Nor does the brief of the Commissioner argue that the prior decision was administratively final and not reopened.  Therefore, it would appear that the entire period from the date of the plaintiff's first SSI application on April 18, 2001 is relevant in the present decision.

The plaintiff argues that it was error for the ALJ to reject opinions from Treating Physicians Roy Varghese and Anita Cornett limiting Mrs. Fields to less than full-time sitting and standing.  (Tr. 206-9, 537-8).  The plaintiff also cites the opinion of Dr. Hughes Helm, a one-time examiner who restricted the plaintiff to no frequent lifting of any weight.  (Tr. 249-57).[1]  The plaintiff notes that the opinions of the treating physicians were entitled to controlling weight.

_____

[1]Dr. Helm was not licensed in Kentucky at the time of the examination, and the ALJ properly accorded it no weight.  (Tr. 24).

8

While the opinion of a treating physician is entitled to controlling weight if it is supported by sufficient objective evidence, the defendant argues that the opinion of Dr. Cornett was not entitled to controlling weight because it was not supported by her objective findings, and states that the assessment which the plaintiff identifies as being from Dr. Varghese has an illegible signature which does not match the signatures on office notes from Dr. Varghese.  These contentions were not made by the ALJ, however.

The Sixth Circuit has held that it is an elementary principle of administrative law that the Commissioner is bound to follow his own regulations, which state that an ALJ is required to give good reasons for failing to accept the opinion of a treating source.  Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).  The ALJ mentioned Dr. Cornett's restrictions only in passing, describing them as "limited sedentary work" (Tr. 24), which is incomplete and somewhat misleading since the physician had restricted the plaintiff to no standing or walking whatever (Tr. 207).  The ALJ fails to mention Dr. Varghese's restrictions at all.  More important, apart from these isolated references, the ALJ gave no real rationale for refusing to accept their opinions other than a conclusory statement that their reports were "skewed or biased in the claimant's favor" and that they "have a tendency to overlook adjectives such as small or mild."  (Tr. 24).  The ALJ, while failing to mention the recent restrictions given by Dr. Varghese, asserted that Dr. Varghese's referrals for severe right knee osteoarthritis "fails to address the root cause, obesity (225 pounds at 68 [inches])."  (Id.).  This would appear to be a medical conclusion

outside the ALJ's area of expertise, and, in any case, a person reading the administrative decision would not even be aware that Dr. Varghese had restricted his patient to less than full-time work.  As a justification for his conclusions, the ALJ stated that he would give great weight to a CT scan of the lumbosacral spine performed by Dr. Dhirem Desai, a radiologist, on October 24, 2002.  (Id.).  Dr. Desai found a "moderate to marked" disc protrusion at L2 with impression on the ventral thecal surface and narrowing of the left neuroformina, a circumferential bulge at L4 without evidence of herniated nucleus pulposus, and "marked" degenerative changes in the facet joints of L4-L5 and L5-S1.  (Tr. 285).  Dr. Desai did not give any opinion concerning functional restrictions, although the ALJ appears to imply that he did so.  (Tr. 24, 27).  To a lay reviewer, it is not obvious why an individual with a "moderate to marked" disc protrusion at one level and "marked" degenerative changes at other levels would clearly be capable of a greater degree of walking and standing than found by the two treating sources.  In short, while the evidence does not support an award of benefits, the administrative decision simply does not meet the procedural requirement of giving good reasons for rejecting the opinions of the plaintiff's treating physicians.[2]

_____

[2]A professional medical opinion was given by a non-examining state agency reviewer, Dr. Timothy Gregg, on November 18, 2004.  (Tr. 505-10).  Dr. Gregg's opinion supports the physical factors found by the ALJ, but was not cited by the ALJ.  In addition, Dr. Gregg did not have the benefit of a review of the entire record, including the apparent recent opinion of a treating source.  See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Finally, Dr. Gregg stated that the plaintiff's pain had been considered and was considered credible.  (Tr. 510).  Since the plaintiff described her back pain as "excruciating" (Tr. 589) and "ten and a half" on a scale of one to ten (Tr. 553), one is left

07-78  Fields

The plaintiff's other argument on appeal concerns IQ testing performed by a psychologist, Dr. Robert Fitz, on June 24, 2002.  Dr. Fitz had conducted a prior consultation of the plaintiff, which did not include IQ testing and did not produce any diagnosis.  (Tr. 139-46).  At the second examination, Dr. Fitz administered IQ testing which produced scores in the range of mild mental retardation, but concluded that they were not an accurate estimate of the plaintiff's current mental functioning.  (Tr. 263).  Counsel for the plaintiff complains that the psychologist stated the scores were invalid because the verbal and performance IQ subtests were too similar, but, in fact, Dr. Fitz felt that the plaintiff was giving an inconsistent performance and appeared to be withholding effort.  (Tr. 264).  He also stated that her reported educational history and conversation were not consistent with mental retardation.  (Id.).  The ALJ essentially adopted Dr. Fitz's specific functional capacity finding, including his conclusion that the plaintiff had no medically determinable medical impairment (Tr. 265-8), a conclusion that was supported by a non-examining state agency source in November, 2004 (Tr. 514, 526).  While there is certainly some evidence that the plaintiff was being prescribed medications for depression and anxiety, including Valium and Prozac (Tr. 399, 401, 467, 475), the physicians prescribing these medications did not list any restrictions.  However, Dr. Cornett had indicated the presence of some greater restrictions in 2002 (Tr. 209) as well as diagnosing a generalized anxiety disorder.  While not extensive, her

---

to wonder at what degree of reported pain the physician would consider incapacitating.

07-78 Fields

office notes contain scattered references to psychological problems. (Tr. 229). The current ALJ stated that he incorporated the prior ALJ's discussion of the evidence by reference, but the prior ALJ discussed only Dr. Cornett's physical findings and restrictions. (Tr. 292). The prior ALJ mentioned the plaintiff's testimony that Dr. Cornett had treated her for her nerves and contained the statement that he questioned the plaintiff's compliance with the anti-depressant medication prescribed by Dr. Cornett (Tr. 294-5), but it appears that neither ALJ ever really addressed the mental restrictions given by this source. This is a matter that can be addressed on remand.

The decision will be remanded for further consideration.

This the 9th day of January, 2008.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**